**R. J. WEBBER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 35850.**

Court of Criminal Appeals of Texas.

June 19, 1963.

Rehearing Denied Oct. 16, 1963.

Al Clyde, Fort Worth, E. Preston Young, Louisville, Ky., for appellant.

Doug Crouch, Dist. Atty., John Brady, Asst. Dist. Atty., Fort Worth, Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The unlawful practice of medicine is the offense; the punishment, thirty days in jail and a fine of $500.

The complaint and information, drawn under the Medical Practice Act, Articles 739 and 741, V.A.P.C., omitting the formal parts, alleged that on or about the 11th day of February, 1962, the appellant did unlawfully

"diagnose, treat and offer to treat, a disease and disorder of a human being, and to effect a cure thereof, to-wit: said defendant did then and there diagnose, treat and offer to treat a disease and disorder of the head, scalp and hair of M. H. Crabb, while he, the said defendant, did then and there maintain an office and designate a place for meeting, advising with, treating, and prescribing for patients, and did then and there charge a sum of money, to-wit: $182.50 therefor, without first having registered in the District Clerk's Office of said County and State a certificate evidencing his right to practice medicine, as issued to him by the Board of Medical Examiners, together with his age, post office address, place of birth, name of medical college from which he graduated and date of graduation, subscribed, and verified by oath, in compliance with, and as required by, Vernon's Annotated Penal Code, Article 739 * * *."

Dr. McKinley Crabb, called as a witness by the state, testified that he was a duly licensed and practicing physician in the city of Fort Worth and was also a member and secretary of the Texas Board of Medical Examiners; that on the 11th day of February, 1962, he read an advertisement in a local newspaper, The Fort Worth Star Telegram, with reference to growing hair on bald heads; that in response to the ad he went to a certain room in the Texas Hotel, where, after waiting some ten minutes, appellant appeared and invited him into an adjoining room; that, after they entered, appellant asked what he was there for, to which he replied that he had a bald spot on his head and had come to see him in answer to his ad. Appellant then, with the use of a light, proceeded to examine his head and scalp and, after he had finished the examination, told Dr. Crabb that he had pus around the roots of the hair follicles and that the blood supply was impaired. Appellant then discussed his treatment of the condition, stating that he thought he could help him and that by using his treatment he could cure the pus and grow some hair on his head. A written contract was then produced by appellant, providing for six months' treatment at a cost of $182.50, which they both signed, Dr. Crabb signing the same under the name of "Glen H. Tarpley." At such time, Dr. Crabb paid appellant $15 in cash.

It was stipulated that the appellant was not a licensed physician or doctor of medicine but that he did possess, at the time of the alleged offense, a valid reciprocal cosmetologist's license issued to him by the State of Texas.

Testifying as a witness in his own behalf, appellant admitted having consulted with Dr. Crabb in the hotel room on the day in question, but denied that he told the doctor he had pus around the roots of his hair. Appellant testified that on such occasion, after examining the doctor's scalp, he told him that he had a coagulated condition in the hair follicles, meaning dandruff, and that the treatment would remove the impurities from the hair follicles and restore the proper circulation so the hair could grow to full maturity or length. Appellant denied that he made a charge for his services, but stated that the contract which was signed for $182.50 was for a six months' hair and scalp treatment, with materials to be delivered through the mail to the doctor by Ebb Hair Specialists, the company for which appellant was working.

Appellant also called as a witness, Mrs. Evelyn Jackson, an inspector for the State Board of Cosmetologists, who testified that

applicants for a cosmetological license were required to make a study of the scalp and hair and that certain textbooks covered the study and treatment of dandruff and baldness of the head. On cross-examination, Mrs. Jackson testified that she knew of no authorization or recommendation of the Board of Cosmetology that a cosmetologist diagnose pus at the bottom of the hair root and offer to treat the same for money.

█ Appellant insists that his conviction for unlawfully practicing medicine cannot be sustained under the evidence, because his acts in the transaction were the acts of a cosmetologist, as authorized by the Cosmetology Act, Art. 734b, V.A.P.C., Sec. 2, which defines the practice of cosmetology as follows:

"(b) The practice of hairdressing and cosmetology, as used herein, shall mean the use, by any person for a fee or other pecuniary compensation, of cosmetological preparations, antiseptics, tonics, lotions or creams, engaging in or performing any one (1) or a combination of the following matters, either with the hands or with mechanical or electrical apparati or appliances, to wit: cleansing, beautifying or performing any work on the scalp, face, neck, arms, bust or upper part of the body or manicuring the nails of any person, or in arranging, dressing, curling, waving, cleansing, cutting, singeing, bleaching, coloring or similar work upon the hair of any person by any means.

"(c) Any person using cosmetological preparations, antiseptics, tonics, lotions or creams engaging in or performing any one (1) or a combination of the following practices, either with the hands or with mechanical or electrical apparati or appliances, for a fee or other pecuniary compensation, namely, cleansing, beautifying or performing any work on the scalp, face, neck, arms, bust or upper part of the body or manicuring the nails of any person or in arranging, dressing, curling, waving, cleansing, cutting, singeing, bleaching, coloring or similar work upon the hair of any person by any means shall be deemed to be practicing cosmetology and hairdressing."

While it is undisputed that appellant was a duly licensed cosmetologist, we do not agree that his acts, as shown by the state's testimony, were those confined to cosmetology.

Dr. Crabb's testimony shows that appellant diagnosed the condition of his scalp as pus around the roots of the hair follicles and impairment of the blood supply and that he offered to treat and effect a cure thereof. The doctor further stated that pus around the roots of the hair was an infection and disease.

Appellant's diagnosis and offer to treat and effect a cure of the disease constituted an act of practicing medicine, as defined in Art. 741, supra, of the Medical Practice Act.

█ The Medical Practice Act applies to all who treat diseases as a profession or business. Ex parte Halsted, 147 Tex.Cr. R. 453, 182 S.W.2d 479.

█ The fact that appellant was a duly licensed cosmetologist did not authorize him to practice medicine.

Such has been the holding of this court as applied to a licensed naturopath, DeHay v. State, 158 Tex.Cr.R. 262, 254 S.W.2d 513; Keahey v. State, 168 Tex.Cr.R. 331, 327 S.W.2d 759.

We have examined the informal bills of exception appearing in the statement of facts and find no reversible error.

█ The court's refusal to grant a mistrial when, on cross-examination of appellant, state's counsel—in referring to a blank space for sales tax in the contract executed between appellant and Dr. Crabb—inquired if the state had been paid for the transaction, does not present reversible er-

ror in view of the action of counsel in withdrawing the question, which was unanswered, and the instruction of the court to the jury not to consider the question for any purpose.

The judgment is affirmed.

Opinion approved by the Court.